ELTON L. CLEMENTS and BONNIE L. CLEMENTS, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Clements v. Commissioner
Docket Nos. 8500-77, 2276-78, 2277-78.
United States Tax Court
T.C. Memo 1981-530; 1981 Tax Ct. Memo LEXIS 210; 42 T.C.M. (CCH) 1144; T.C.M. (RIA) 81530; September 22, 1981; As Amended October 23, 1981 Arthur P. Tranakos, for the petitioners. Mark W. Nickerson, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in the Federal income tax of Elton L. and Bonnie L. Clements for the calendar years ended December 31, 1972, and December 31, 1975, in the amounts of $ 41,616.95 and $ 5,635, respectively, and additions to tax under section 6653(a) [2] for the calendar year 1972 in the amount of $ 2,080.85. Respondent determined a deficiency in the Federal income tax of Shamrock Developers, Inc. for the calendar year 1972 in the amount of $ 57,270.93 and an addition to tax under section 6653(a) in the amount of $ 2,863.55. The issues for decision are as follows: (1) Whether Elton L. Clements (Mr. Clements) received distributions *212 in the year 1972 from Shamrock Developers, Inc. (Shamrock) in the amounts of $ 136,401.71, $ 27,491.75 and $ 1,000 by reason of use of corporate funds to purchase the Shamrock stock, a withdrawal of cash from Shamrock, and a payment by Shamrock of Mr. Clements' legal expenses, and if Mr. Clements did receive such distributions, are they taxable to him as dividend income in 1972 to the extent of Shamrock's current and accumulated earnings and profits; (2) whether Shamrock is entitled to a deduction in 1972 in computing its taxable income of $ 27,491.75 as compensation paid to Mr. Clements and to a deduction of $ 1,000 for legal fees; (3) in the alternative, if it is determined that Mr. Clements purchased the assets of Shamrock rather than the stock of Shamrock, did Shamrock realize a gain from the sale of its assets in 1972 in the amount of $ 99,507.99; (4) whether petitioners Elton L. and Bonnie L. Clements and the corporate petitioner, Shamrock Developers, Inc., are each liable for the addition to tax under section 6653(a) for the calendar year 1972. FINDINGS OF FACT Petitioners Elton L. and Bonnie L. Clements, husband and wife, who resided in Warner Robins, Georgia, at *213 the time of the filing of one of their petitions in this case, and in Byron, Georgia, at the time of the filing of their other petition in this case, filed joint Federal income tax returns for the calendar years 1972 and 1975 with the Director, Internal Revenue Service Center, Chamblee, Georgia. Shamrock was incorporated under the laws of Georgia in 1965 and at the time of the filing of its petition in this case had its principal office in Houston County, Georgia. Shamrock filed its Federal corporate income tax return for the calendar year 1972 with the Director, Internal Revenue Service Center, Chamblee, Georgia. Mr. Clements was a contractor and developer. In 1972 he operated his business as a sole proprietorship and kept his books and records on the cash basis method of accounting. On January 1, 1974, Mr. Clements formed a partnership E.L. Clements and Son Construction Co. (the partnership). The partnership took over the contracting and construction business previously operated by Mr. Clements as a sole proprietorship. For the calendar year 1972, Shamrock kept its books and records on an accrual basis method of accounting. From the time it commenced business on January 3, 1966, the *214 principal business of Shamrock was the development and sale of residential lots. From the time of its incorporation until October 10, 1972, Shamrock had four shareholders, each of whom owned ten shares of its stock. Each shareholder was a member of the board of directors and three of the shareholders were officers. These shareholders were Edward Bayer, president; george Kushinka, secretary; Walter Whiting, treasurer; and William Wisse. Mr. Kushinka and Mr. Wisse were lawyers practicing in Warner Robins, Georgia. They had represented Mr. Clements since approximately 1961 in connection with his purchase of land, his construction contracts and his sale of property. The major asset of Shamrock as of January 1, 1972, was a tract of land known as the Canterbury Estates Subdivision. This tract had originally contained approximately 186 acres, but prior to January 1, 1972, a portion of the property had been subdivided and sold as residential lots. Mr. Clements, in early 1972, purchased several of the lots in the Canterbury Estates Subdivision from Shamrock. In August 1972 Mr. Clements approached Messrs. Kushinka and Wisse concerning the possibility of his purchasing all of the property *215 owned by Shamrock in the Canterbury Estates Subdivision. Prior to Mr. Clements' discussion with Messrs. Kushinka and Wisse about the possibility of purchasing the Canterbury Estates lots, some of the shareholders of Shamrock had discussed with other shareholders their desire to get out of the development business. After Mr. Clements' discussion with Messrs. Kushinka and Wisse about the possibility of purchasing the Canterbury Estates lots, the shareholders of Shamrock met and decided to sell either the property of Shamrock or the Shamrock stock to Mr. Clements. On September 19, 1972, Mr. Clements obtained a letter of commitment from Tharpe & Brooks, Inc. (Tharpe & Brooks) wherein Tharpe & Brooks agreed to make a land acquisition loan of $ 211,475 to Mr. Clements and, in addition, to make a development loan once acceptable development costs had been submitted. The letter of commitment dated September 19, 1972, addressed to Mr. Clements by Tharpe & Brooks was entitled "Re: Canterbury Estates, Section II, 84.59 Acres, Houston County, Georgia." The commitment provided for the interest rate to be charged, the release of lots upon repayment of part of the loan, a term of 18 months *216 for the land acquisition loan, and "Personal Endorsement: Personal endorsement will be required from Elton L. Clements." The terms of the commitment letter were accepted by Mr. Clements under date of September 21, 1972. On September 26, 1972, Messrs. Kushinka and Wisse contacted Homer Childs, Shamrock's accountant, and requested his advice on how the transactions with Mr. Clements should be structured. Mr. Childs advised the shareholders of Shamrock that it would be better for them to sell their stock to Mr. Clements rather than have the corporation sell the tract of land to him. Mr. Childs, at the request of the shareholders, brought the corporate books and records of Shamrock up-to-date as of August 31, 1972, to enable the shareholders to evaluate the current financial status of the corporation. The accumulated earnings and profits of Shamrock as of January 1, 1972, were $ 26,070.14. Based on Mr. Childs' advice, the shareholders of Shamrock decided to offer to sell to Mr. Clements their stock in the corporation rather than have the corporation sell the land to Mr. Clements. Under date of October 4, 1972, Thrape & Brooks addressed a letter to Mr. Kushinka "Re Shamrock *217 Developers, Inc. * * *" stating that it had been agreed "to make a loan to the above." It was further stated in the letter that Shamrock "has requested that we issue instructions to you as closing attorney with the understanding that all costs in connection with the closing will be paid by the borrower." The description of the property was referred to as "Canterbury Estates, Section II, 84.59 Acres, Houston County, Georgia," and the loan amount as $ 211,475. One of the conditions set forth with respect to the loan was "Personal Guaranty: Elton L. Clements." This letter further stated: "Loan Agreement: Loan commitment/agreement dated September 19, 1972, is to be referenced in the Security Deed as if set out therein verbatim." The October 4, 1972, letter carried substantially the same conditions with respect to the loan as did the commitment letter dated September 19, 1972, addressed to Mr. Clements. On October 9, 1972, Shamrock's board of directors held a meeting. The minutes of this meeting state in part: The Corporation acknowledged that all the Stockholders, being Edward Bayer, George Kushinka, Walter D. Whiting and William Wisse, have each agreed to sell their *218 stock consisting of ten (10) shares each to Elton L. Clements, for the sum of $ 34,100.43 each. These minutes further provided that the board advise the president and secretary to execute all documents necessary in accordance with the intention of the shareholders. A closing of the transaction between the shareholders of Shamrock and Mr. Clements was held on October 10, 1972. At the closing, a note to Tharpe & Brooks from Shamrock was signed by Mr. Clements as president of Shamrock and was also signed by him individually. A loan agreement between Tharpe & Brooks and Shamrock dated October 10, 1972, was executed at the closing by Mr. Clements as president of Shamrock, and Mr. Clements' signature was attested by Mrs. Clements. Also at the closing a deed to secure debt, reciting that it was made between Shamrock and Tharpe & Brooks, was executed on behalf of Shamrock by Mr. Clements as president of Shamrock. The closing statement showed cash assets of Shamrock, including $ 45,466.79 of the loan proceeds for payment of liabilities, as totaling $ 94,218.68, of which $ 80,542.15 was to be used to pay off deeds to secure debt to the Citizens State Bank so that Tharpe & Brooks could *219 receive a clear first mortgage on the property. The balance of the $ 94,218.68 was disbursed for such items as title insurance, recording fees, taxes and loan commitment fees. The amount of $ 1,063 of the $ 94,218.68 assets was shown as being used for a payment to Wisse, Kushinka, Clarke & McConnell with the explanation "legal fee and previous account." The second page of the closing statement showed the following with respect to the disbursement of the $ 211,475 loan proceeds: TOTAL TO DISBURSE
$ 211,475.00
Elton L. Clements
27,491.75
Shamrock Developers, Inc.
2,114.75
NET BALANCE TO DISBURSE
$ 181,868.50
Shamrock Developers, Inc.
45,466.79
NET BALANCE TO DISBURSE
$ 136,401.71
Edward Bayer
34,100.43
Walter D. Whiting
34,100.42
George Kushinka
34,100.43
William Wisse
34,100.43
TOTAL DISBURSED
$ 211,475.00
At the closing, each of the four original shareholders of Shamrock endorsed his stock certificate over to Mr. Clements. A new stock certificate was prepared in Mr. Clements' name for 40 shares of common stock, representing all of the outstanding stock of Shamrock, but this certificate was never signed. During the closing, Mrs. Clements raised *220 a question with Mr. Wisse about the various papers that were given to her to sign, particularly a paper entitled "Corporation Resolutions" which recited that she, as secretary of Shamrock, certified to a resolution establishing the Citizens State Bank in Warner Robins as the depository of funds of the corporation. This document was signed by Mr. Clements as president and Mrs. Clements as secretary and subscribed to by Mrs. Clements as secretary, with the seal of the corporation being placed thereon. When she raised the question, Mrs. Clements was told that it was necessary for her to sign this document in order to be able to sign checks at the bank. When she further inquired about the transaction, Mrs. Clements was told something to the effect that Mr. Clements was buying the land and the shareholders were "giving him the corporation to work out of." On the day of the closing, in addition to signing the corporate resolution establishing the corporate bank account, Mr. Clements signed as president of Shamrock a declaration of protective convenants. On October 13, 1972, Shamrock conveyed a lot in the Canterbury Estates Subdivision to a Mr. Roland and one to Mr. Clements. Mr. Clements *221 signed both deeds as president of Shamrock. Either at the closing or shortly thereafter, Mr. Kushinka stated to Mr. Clements that he might have some "tax problems" with respect to the $ 27,491.75 from the loan proceeds disbursed to him at the closing and suggested that he retain Mr. Childs to take care of this. Mr. Clements did not contact Mr. Childs. However, in December 1972 Mr. Childs and Mr. Clements met in the offices of Mr. Kushinka's law firm. At this time Mr. Childs asked Mr. Clements what he planned to do with respect to the books of Shamrock and Mr. Clements told him that he would let him know. Between October 10, 1972, and July 5, 1973, Shamrock paid off the entire $ 211,475 loan to Tharpe & Brooks. This was paid primarily from the proceeds of sale of lots in Canterbury Estates but to a small extent by a bank loan. On March 1, 1973, Mr. Childs called Mr. Clements to ascertain whether Mr. Clements wanted him to prepare the 1972 corporate tax return of Shamrock. During this conversation, Mr. Clements did engage the services of Mr. Childs to prepare the 1972 corporate tax return for Shamrock. Shortly after March 1, 1973, Mr. Childs roughed out the income and expenses *222 of Shamrock and filed a request for automatic extension of time of file the 1972 corporate returnd. Mr. Childs and Mr. Clements had no further conversations until around June 1 when Mr. Childs talked with Mr. Clements and obtained the full details concerning the sale of Shamrock. At this time Mr. Childs asked Mr. Clements if he had executed a note to Shamrock with respect to the $ 136,401.71 of the loan proceeds used to purchase the corporate stock. Mr. Clements said that he had not executed such a note and Mr. Childs suggested that, perhaps, Mr. Clements could transfer some assets into Shamrock to offset the $ 136,401.71 amount.d Mr. Childs prepared a set of work papers for Shamrock on which he set forth the $ 136,401.71 as an account receivable due from Mr. Clements to Shamrock. No interest was accrued with respect to this account receivable. Mr. Childs also inquired of Mr. Clements concerning the $ 27,491.75 in cash which had been disbursed to Mr. Clements from the $ 211,475 loan proceeds. Mr. Clements asked why Mr. Childs needed to know anything about this disbursement and said that he felt he had the right to take the money as the owner. Mr. Childs suggested that the $ 27,491.75 *223 be treated on the corporate books as compensation to Mr. Clements and recommended to Mr. Clements that he file an amended 1972 tax return reporting the amount. Mr. Clements stated that he did not want to file an amended 1972 return and, for this reason, Mr. Childs, on the work paper which he prepared to use in connection with the preparation of Shamrock's 1972 Federal income tax return, set up the $ 27,491.75 as an account receivable from Mr. Clements. On this work paper Mr. Childs showed this same amount as due Mr. Clements as salaries and commissions and offset the two. On the 1972 corporate income tax return which Mr. Childs prepared for Shamrock, the $ 27,491.75 was deducted as salary to Mr. Clements. No interest was accrued with respect to the account receivable from Mr. Clements of $ 27,491.75 set up by Mr. Childs on his work papers with respect to Shamrock. Mr. Clements did not actually draw any salary from Shamrock for at least a year after assignment of the Shamrock stock to him. On its corporate tax return for the calendar year 1972, signed by Mr. Clements as president of the corporation on June 15, 1973, taxable income of $ 8,965.56 was reported. Included in the *224 deductions reported in arriving at this taxable income was $ 27,491.75 reported as "Compensation of officers * * *… Elton Clements." Also included in the deductions shown on this tax return were legal and professional fees of $ 5,079.38. Included in the $ 5,079.38 amount was $ 1,000 paid as a legal fee to Messrs. Kushinka and Wisse by Shamrock at the closing of the Shamrock transactions on Cotober 10, 1972. During the years 1972 and 1973, Mr. Clements drew checks on his personal account in amounts totaling $ 16,607.02 and $ 5,926.75, respectively, for obligations in connection with the development of lots in the Canterbury Estates Subdivision. Most of the checks to Macon Concrete small amounts, although there was one check to Macon Concrete Pipe Co. on December 14, 1972, for $ 3,116.46 and a check on December 8, 1972, to Clow Corporation for $ 5,307.42. Adjusting entries to the books of Shamrock as of December 31, 1973, showed an amount of $ 19,094.68 composed of interest expense of $ 1,360.57, plats and surveys of $ 1,000, materials of $ 10,990.36, and subcontracts of $ 5,743.75, designated as "Notes Payable--E.C." The explanation for the entry was "Record Note/Signed 1-5-73 Due *225 to Elton Clements." On January 19, 1973, Shamrock issued a check to Mr. Clements for $ 10,000 on whichd the notation appeared "repayment on note for monies expended on behalf of Corp." On February 1, 1973, Shamrock issued a check to Mr. Clements for $ 6,000 with a similar notation, and on February 16, 1973, Shamrock issued a check to Mr. Clements for $ 1,000 with a similar notation. Mr. Clements, after Cotober 10, 1972, on a number of occasions used his heavy machinery, tractors, and dump trucks in connection with the development of lots in the Canterbury Estates Subdivision. Mr. Clements, on his 1972 tax return, deducted depreciation on construction equipment, autos and trucks, and also deducted gas, oil and tires in computing his taxable income. On or about July 15, 1974, Mr. Clements filed a complaint in equity against Mr. Kushinka, Mr. Wisse, Mr. Whiting, Mr. Childs, Mr. Bayer and Warner Robins Supply Company, Inc. in the Superior Court of Houston County, Georgia. He was represented in this action by J. Laddie Boatright. The complaint contained six counts. The first count alleged that Mr. Clements was entitled to a judgment declaring him the owner in fee simple of a certain *226 parcel of land which was unrelated to the Canterbury Estates property. This land had been involved in a transaction among Mr. Clements, Warner Robins Supply Company, Inc. (of which Messrs. Whiting and Bayer were officers), and Messrs. Kushinka and Wisse. In connection with count one, Mr. Clements also claimed damages in the amount of $ 300,000. In the second count of the complaint Mr. Clements claimed title to a piece of land which the county records showed Mr. Clements had deeded to Mr. Wisse and Mr. Kushinka. The complaint alleged that this purported deed was a forgery. The third count of the complaint dealt with Mr. Clements' contention that the sale of the stock of Shamrock to him rather than the land owned by Shamrock was the result of false and fraudulent representations made to him by Messrs. Kushinka and Wisse. Mr. Clements, in this count, claimed that he was entitled to recover $ 111,173.46 of additional taxes paid because of the structure of the transaction and damages of $ 250,000. In count four Mr. Clements alleged that over a period of 10 years he had paid amounts to mmr. Wisse and Mr. Kushinka based on illegal charges billed to him. He claimed he was entitled *227 to recover $ 10,000 on this count. In count five he alleged that Messrs. Kushinka and Wisse owed him at least $ 50,000 on open accounts for materials and supplies and labor furnished to them over the past four years and for work done on their offices, residences, recreation facilities and other business properties. In count six Mr. Clements alleged that Messrs. Wisse and Kushinka were guilty of bad faith in all the transactions set forth in counts one through five and breach of the duty created by their fiduciary relationship with Mr. Clements. Mr. Clements sought punitive damages of $ 250,000 in count six. By order dated June 27, 1975, the Houston County Superior Court granted a summary judgment in favor of Warner Robins Supply Company, Inc., Walter Whiting and Edward Bayer, dismissing them from the action. After this dismissal, Mr. Clements, in 1976, amended his complaint, splitting the six counts into nine. In the new complaint the original counts one and two became counts one, two, three and four; the original count three became counts five and six; and the original count six became count nine. On December 1, 1976, the Houston County court ordered that Warner Robins Supply *228 Company, Inc., Walter Whiting and Edward Bayer be dismissed from the amended complaint. Homer Childs was voluntarily dismissed from the suit by Mr. Clements. On February 2, 1977, the court rendered summary judgment for Messrs. Wisse and Kushinka as to all counts of the amended complaint except counts one, two, three, four and nine. Mr. Clements' suit against Messrs. Wisse and Kushinka on these remaining counts was ultimately settled by the parties. During the taxable year 1975, Mr. Clements drew checks on Shamrock's corporate account and on the partnership account of E. L. Clements and Son Construction Company in payment of attorneys' fees in the total amounts of $ 9,700 and $ 11,902, respectively. All of the checks drawn on the partnership account were drawn to J. Laddie Boatright. All of the checks drawn on the Shamrock account, except for a check dated January 10, 1975, in the amount of $ 1,500 and a check dated March 16, 1975, in the amount of $ 200 which were drawn to J. Laddie Boatright, were drawn to Arthur P. Tranakos. Mr. Tranakos rendered services to both Shamrock and Mr. Clements during 1975 in connection with Federal income tax matters. Checks in the amount of *229 $ 4,000 drawn on Shamrock's account to Mr. Tranakos were for services rendered in having a tax lien on certain of Shamrock's property removed. The property from which the lien was removed was part of Shamrock's inventory of developed lots held for sale. Checks in the amount of $ 4,000 drawn on Shamrock's account in 1975 to Mr. Tranakos were for payment to him in connection with his appearing at various conferences with the Internal Revenue Service in regard to the proposed deficiency in Mr. Clements' income tax for the year 1972 which is involved in this litigation. The amount of $ 1,700 paid to Mr. Boatright by Shamrock and the amount of $ 4,000 paid to Mr. Tranakos from Shamrock's account for legal services for Mr. Clements in connection with his tax liability were shown on Shamrock's books as amounts due to Shamrock from Mr. Clements. Since 1973, whenever Shamrock drew a check in payment of a personal liability of Mr. Clements, the amount was shown as a loan by Shamrockd to Mr. Clements. These loans would be offset by amounts due Mr. Clements by Shamrock. The partnership records showed the amounts paid to Mr. Boatright for attorneys' fees as charged to Mr. Clements' drawing *230 account. In addition to the direct payments to the attorneys, Mr. Boatright and Mr. Tranakos, made on behalf of Mr. Clements by the partnership and by Shamrock, the partnership paid a total of $ 1,820.03 in 1975 for expenses of Mr. Boatright, including a payment to an accounting firm for work done in connection with the suit instituted by Mr. Clements in Houston County. Shamrock paid an expense of $ 100 on June 13, 1975, in connection with this same suit. This $ 100 was also set up on Shamrock's books as an accounts receivable from Mr. Clements. A check for $ 500 on the partnership account dated January 10, 1975, drawn payable to cash, was also listed as being chargeable to attorneys' fees paid for Mr. Clements. On their Federal income tax return for the calendar year 1972 Mr. and Mrs. Clements reported no income received from Shamrock. Respondent in his notice of deficiency to Mr. and Mrs. Clements determined that Mr. Clements received total distributions from Shamrock in the amount of $ 164,893.46 composed of corporate funds of Shamrock of $ 136,401.71 used to purchase stock issued to Mr. Clements, cash funds received from Shamrock of $ 27,491.75, and legal fees of Mr. *231 Clements paid by Shamrock of $ 1,000. Respondent further determined that $ 96,146.44 of the distribution made by Shamrock to Mr. Clements in 1972 represented distributions of current and accumulated earnings and profits of Shamrock and increased the income of Mr. and Mrs. Clements as reported on their return by this $ 96,146.44 amount. On brief respondent conceded that if he is sustained in his position that $ 136,401.71 of corporate funds of Shamrock were used to purchase stock issued to Mr. Clements, his determination of the earnings and profits of Shamrock for 1972 as set forth in the notice of deficiency to Mr. and Mrs. Clements is in error. This is based on the fact that his determination of the 1972 income of Shamrock was made by considering that Mr. Clements had purchased the 84.59 acres of property from Shamrock and that Shamrock had realized a gain on the sale of the 84.59 acres to Mr. Clements. On brief respondent takes the position that if he is correct in his determination that Mr. Clements purchased the stock of Shamrock in October 1972 with funds distributed to him by Shamrock, Shamrock's current and accumulated earnings and profits for 1972 would be $ 50,372.77. *232 Respondent arrived at this amount by adding to the agreed accumulated earnings and profits of Shamrock as of January 1, 1972, of $ 26,070.14, an amount of current earnings and profits for the year 1972 of $ 24,302.63 which he computed as follows: Net income reported by
Shamrock on its return
$ 9,537.83
Disallowed deduction for
salaries and commissions
to Mr. Clements
27,491.75
Disallowed legal fees
1,000.00
$ 38,029.58
Less: Accrued Federal
income tax
$ 11,479.51
Accrued State
income tax
2,247.44
13,726.95
Total
$ 24,302.63
Respondent determined that Mr. and Mrs. Clements were liable for the addition to tax under section 6653(a) for the year 1972. Respondent in his notice of deficiency to Mr. and Mrs. Clements for the calendar year 1975 disallowed in full the deduction of $ 24,031 claimed by them as payments of legal fees. Respondent explained that Mr. Clements had not established that any portion of the amount constituted ordinary and necessary business expense or that any portion of the amount was paid during the taxable year 1975 for the production or collection of income or for the conservation or maintenance of property held *233 for the production of income, or in connection with the determination, collection or refund of any tax. Respondent further explained that it had not been established that the amount of $ 24,031 was paid by Mr. or Mrs. Clements during the year 1975 for the purposes claimed on their return. Respondent in his notice of deficiency to Shamrock for the year 1972 increased its gross receipts from sales of land as reported on its return by the amount of $ 181,868.50, stated to be receipts from sale of land to Mr. Clements. The $ 181,868.50 amount was composed of $ 45,466.79 of the loan proceeds retained by Shamrock and the $ 136,401.71 of those loan proceeds used to pay the four shareholders of Shamrock. Respondent determined that Shamrock had a basis in the land sold composed of costs of land and development costs in a total amount of $ 82,360.51 and therefore increased Shamrock's reported income by a profit on land sold to Mr. Clements of $ 99.507.99. Respondent in his notice of deficiency to Shamrock disallowed the deduction of $ 27,491.75 claimed by Shamrock on its 1972 return for compensation to officers and also disallowed $ 1,000 of the $ 5,079.38 claimed by Shamrock on its 1972 *234 return as a deduction for legal and professional fees. Respondent explained these adjustments by stating that the $ 27,491.75 represented a dividend distribution to Mr. Clements rather than a payment for services rendered, and that the $ 1,000 represented a payment of a personal expense of Mr. Clements rather than a corporate business expense. Respondent determined that Shamrock was liable for the addition to tax under section 6653(a) for the year 1972. On brief, respondent conceded that if he is sustained on his contention that Mr. Clements purchased the stock of Shamrock on October 10, 1972, rather than the land owned by the corporation, the taxable income of Shamrock as set forth in his notice of deficiency is overstated by $ 99,507.99. OPINION Section 301 provides that a distribution of property by a corporation to a shareholder with respect to its stock shall be included in the gross income of the shareholder to the extent that the distribution constitutes a dividend as defined in section 316, and that to the extent the distribution is not a dividend it shall be applied against *235 and reduce the basis of the stock. [3]Section 316 defines a dividend as a distribution of property made by a corporation to a shareholder out of earnings and profits accumulated after February 28, 1913, or out of earnings and profits computed as of the close of the taxable year without diminution by reason of any distributions made during a taxable year and without regard to the amount of earnings and profits at the time the distribution was made. [4]
*236 It has long been settled that not only amounts declared as dividends are to be considered distributions by a corporation but also amounts paid by a corporation for the benefit of a shareholder. The cases regarding construction dividends are numerous. It is clear that the question is not whether the amount is shown on the corporate books as a dividend but, rather, whether corporate funds were expended for the economic benefit of the shareholder without expectation of repayment. United States v. Smith, 418 F.2d 589, 593 (5th Cir. 1969). As was pointed out in that case, "* * * it is well settled that corporate payments in discharge of a shareholder-taxpayer's personal debts and liabilities are in the nature of constructive dividends." Here, if were conclude as a matter of fact that Mr. Clements agreed to and did buy the stock of Shamrock, it follows that the payment to the four former shareholders of the $ 136,401.71 was an obligation of Mr. Clements that was discharged with funds of Shamrock. *237 Cases involving constructive dividends have often arisen in situations where a corporation redeemed the stock of all but one of the corporate shareholders. In these cases the factual determination made in concluding whether the remaining shareholder had received a taxable dividend in the amount of the redemption price paid by the corporation for the stock of the other shareholders was whether the shareholder whose stock was not redeemed had a personal obligation to purchase the stock of the shareholders whose stock was redeemed. See Stephens v. Commissioner, 60 T.C. 1004, 1011 (1973). In many cases it has been stated that whether a particular transaction results in such an economic benefit to a shareholder as to cause a corporate payment to be a dividend to the shareholder depends on the facts of the particular case. Sullivan v. United States, 363 F.2d 724 (8th Cir. 1966); Adams v. Commissioner, 69 T.C. 1040 (1978). All of the papers in this case are set up to show that Shamrock borrowed $ 211,475 on the security of land it owned and that Mr. Clements purchased from the Shamrock shareholders all the stock of Shamrock, using the *238 proceeds of the loan received by Shamrock to pay for the stock. Although at a later date the $ 136,401.71 used to pay for the Shamrock stock transferred at the closing by the four shareholders to Mr. Clements was set up on the books of Shamrock as a loan to Mr. Clements, the evidence is completely clear that Mr. Clements never intended this payment by the corporation to be a loan to him and that the amount in fact was not repaid by Mr. Clements to the corporation. Mr. Clements' position is not that the amount used to purchase the stock was a loan to him but, rather, that he thought he was purchasing the Canterbury Estates property owned by Shamrock and not the Shamrock stock. Mr. Clements claimed that he was misled by his attorneys as to the nature of the transaction. If, as Mr. Clements contends, the transaction should be considered in substance as a purchase by Mr. Clements of the real property owned by Shamrock, the tax effect is entirely different from that which results from a purchase of the Shamrock stock by Mr. Clements. The record is clear that Mr. Clements knew that he was acquiring the ownership of the corporation. It is his contention that he was told by Mr. Kushinka *239 and Mr. Wisse that they were "giving him" the corporation "to work out of." Mr. Clements never explained what he thought this statement meant. Certainly, his actions deny that he personally was the owner of the 84.59 acres of property owned by Shamrock. Mr. Clements was versed in real estate transactions and certainly would have expected a deed made out to him for property which he purchased. He received no such deed at the closing. Also, three days after the closing Shamrock deeded one lot to an unrelated person and the deed from Shamrock to the unrelated person was signed by Mr. Clements as president of Shamrock. On the same date, Shamrock deeded a lot to Mr. Clements personally and the deed was signed by Mr. Clements as president of the corporation. It is clear from Mr. Clements' 1972 tax return that he reported no gain or loss from the sale of any of the 84.59 acres of land owned by Shamrock and it is clear from Shamrock's return that it did report the gain from the sales of various lots from the 84.59 acres in 1972. In fact, Shamrock's return shows the unsold land as its inventory. There are many other indications in this record that Mr. Clements knew he was purchasing *240 the stock of Shamrock and using funds borrowed by Shamrock on the security of its property to make the purchase. The facts indicate that Mr. Clements did not understand the tax effects of making the purchase of the Shamrock stock in this manner. It is not necessary for us to decide in this case whether Messrs. Kushinka and Wisse should have better explained to Mr. Clements and tax effects of the transaction as it was structured. It is sufficient here that we have concluded that Mr. Clements knew that he was purchasing the stock of Shamrock with funds supplied by the corporation. Since the obligation to pay the purchase price of the stock was that of Mr. Clements, he received an economic benefit when the corporation paid that purchase price with its own funds and, therefore, to the extent of the current and accumulated earnings and profits of the corporation, received a taxable dividend. Mr. Clements makes no contention here that any distinction should be made between this case and other cases involving constructive dividends because of the fact that the funds of the corporation used to pay his personal obligations were borrowed funds. In our view, no such distinction would *241 be appropriate since funds borrowed by corporations are clearly corporate funds. In any event, the record here shows that this $ 211,475 borrowed by Shamrock was repaid out of funds of Shamrock received upon the sale of the property which secured the loan. Therefore, the fact that the funds disbursed by Shamrock to Mr. Clements were funds borrowed by Shamrock on a note guaranteed by Mr. Clements has no significance in determining whether the $ 136,401.71 of funds of Shamrock used to purchase stock issued to Mr. Clements is a constructive dividend to Mr. Clements. We conclude on the basis of this record that Mr. Clements did receive a constructive dividend from the payment by Shamrock of his obligations in connection with the purchase of Shamrock stock to the extent of the current and accumulated earnings and profits of Shamrock. From our anslysis above, it is equally clear that the $ 27,491.75 of the funds borrowed by Shamrock and withdrawn by Mr. Clements is a corporate distribution to Mr. Clements which should be added to the $ 136,401.71 in determining the total 1972 corporate distributions to Mr. Clements which are taxable as a dividend to the extent of Shamrock's current *242 and accumulated earnings and profits. This amount was treated on the books of Shamrock first as an advance to Mr. Clements and later the "advance" was offset by treating the amount as salary to Mr. Clements. The record contains very little evidence as to the purpose of the advance to Mr. Clements of the $ 27,491.75. The evidence indicates that Mr. Clements did not understand the difference between funds of his wholly owned corporation and his own funds and was of the opinion that if the funds were available he had the right to take them for his own use. Evidence was introduced at the trial to show an amount of $ 16,607.02 paid by Mr. Clements in 1972 for expenses of Shamrock. However, the record also shows that as of January 5, 1973, a note was executed by Shamrock to Mr. Clements in the amount of $ 19,094.68 and that Mr. Clements in January and February was paid $ 17,000 on this note. In our view, the amounts expended personally by Mr. Clements for the benefit of Shamrock were shown on Shamrock's books as amounts owed to Mr. Clements, and the record shows that these amounts were repaid to him. The record also shows that Mr. Clements, in 1973, spent $ 5,926.75 of his own funds *243 in payment of expenses for Shamrock. The record indicates that these amounts were also set up as an obligation of Shamrock to Mr. Clements and, although the record is not as completely clear with respect to the repayment of these amounts as it is with respect to the expenditures for Shamrock by Mr. Clements in 1972, the indication from the record is that by the end of 1973 and thereafter the books of Shamrock were showing both amounts due to Mr. Clements because of payments he made for the benefit of Shamrock and amounts owed by Mr. Clements to Shamrock because of payments made by Shamrock of Mr. Clements' personal obligations. The exact amount of each is not completely clear in the record, but the record is certainly sufficiently clear to show that Mr. Clements did not consider the $ 27,491.75 of corporate cash which he took at the closing on October 10, 1972, to be a loan. It is also clear that Mr. Clements did not consider this amount to be payment for services. In fact, he testified that he received no salary from Shamrock for over a year after he purchased the Shamrock stock. The other argument made by Mr. Clements is that he used his machinery in doing work for Shamrock *244 and should be credited with the value of that use against the $ 27,491.75. This record shows that Mr. Clements did use some of his personally owned machinery in connection with Shamrock work. However, it also shows that on his personal tax return he deducted the costs applicable to this machinery. If in fact the use of Mr. Clements' machinery by Shamrock should be offset against any indebtedness of Mr. Clements to Shamrock, then this same amount should be reported by Mr. Clements as income from the rental of his machinery. Although the record is not completely clear as to all items of expenses reported by Mr. Clements on his personal income tax return for 1972, he has certainly failed to show that he repaid any of the $ 27,491.75 to Shamrock through us of his personally owned machinery on Shamrock work. We therefore conclude that the $ 27,491.75 was a corporate distribution to Mr. and Mrs. Clements which should be treated as a dividend to the extent of available current and accumulated earnings and profits of Shamrock. It is far more difficult to determine the nature of the $ 1,000 attorneys' fees paid to Mr. Wisse and Mr. Kushinka in connection with the closing on October 10, 1972, of *245 Mr. Clements' purchase of the Shamrock stock. Mr. Wisse and Mr. Kushinka had apparently participated to some extent in obtaining the commitment for the loan of $ 211,475 to Shamrock in order that the transaction might be carried through. In fact, the letter with respect to this loan being made to Shamrock was addressed to Mr. Kushinka. To the extent any of the attorneys' fees were in connection with Shamrock's obtaining such a loan, they would of course be expenses of Shamrock. To the extent the $ 1,000 of attorneys' fees was for preparing the papers and doing the legal work in connection with the transfer of stock from the prior shareholders to Mr. Clements, the attorneys' fees would be the obligation of Mr. Clements. If these fees were incurred in connection with Mr. Clements' purchase of stock, they would be in the nature of a capital expenditure by Mr. Clements and an addition to his cost of the stock. Woodward v. Commissioner, 397 U.S. 572 (1970). In any event, if the $ 1,000 of attorneys' fees was paid in connection with the purchase of the Shamrock stock by Mr. Clements, the payments was of his obligation. When Shamrock paid this obligation of Mr. Clements, *246 he received an economic benefit and therefore a corporate distribution, which to the extent provided in section 316, is a dividend. Sullivan v. United States, supra.Respondent in his notice of deficiency included the $ 1,000 of attorneys' fees in the distributions made to Mr. Clements by Shamrock. Mr. Clements has the burden to show error in this determination. Since he has failed to show such error, we hold that the $ 1,000 did constitute a corporate distribution to Mr. Clements. We have concluded on the facts in the record that in 1972 Mr. Clements received distributions from Shamrock totaling $ 164,893.46. What portion of these distributions is taxable to Mr. Clements as a dividend and what portion is to be used to reduce his basis in the Shamrock stock depends on the total amount of the current and accumulated earnings and profits of Shamrock in the year 1972. The parties have stipulated that as of January 1, 1972, Shamrock's accumulated earnings and profits were $ 26,070.14. We also have in this case an issue with respect to Shamrock's income for the year 1972. The amount of such income reduced by the Federal and State tax applicable thereto for *247 the year 1972 is to be added to the $ 26,070.14 of agreed accumulated earnings and profits as of January 1, 1972, to determine the current and accumulated earnings and profits of Shamrock which constitutes a dividend to Mr. Clements. Respondent set up an amount in his brief that he contends is the proper amount of the current earnings and profits of Shamrock. We will leave this determination to the computation to be made under Rule 155 of the Tax Court Rules of Practice and Procedure[5] on the basis of our holding with respect to Shamrock's income for 1972. For reasons we set out with respect to our determination of the distributions by Shamrock to Mr. Clements, it is clear that the $ 27,491.75 distributed by Shamrock to Mr. Clements in 1972 was not a salary payment to Mr. Clements but was a corporate distribution to him. We therefore conclude that Shamrock is not entitled to this claimed deduction of $ 27,491.75 of officers' salaries. It is likewise clear from our holding with respect to the $ 1,000 of attorneys' fees paid at the closing on *248 October 10, 1972, that we have concluded that the evidence shows that this amount is not properly deductible by Shamrock. Because of our holding that Mr. Clements purchased the stock of Shamrock rather than its property, it is clear that respondent, as in fact respondent concedes, erred in increasing Shamrock's income in 1972 by $ 99,507.99 of profits from sale of property to Mr. Clements. We therefore hold that respondent erred in increasing Shamrock's 1972 income by this $ 99,507.99. [6]
*249 The only remaining issue in this case is whether Mr. Clements is entitled to a deduction in the year 1975 of $ 24,031 for legal expenses or to any part of that claimed deduction. The record shows that of the payment claimed to be deductible by Mr. Clements, the amount of $ 8,000 was paid by checks of Shamrock to Mr. Tranakos in connection with the tax problems of Shamrock and Mr. Clements. The record shows that $ 4,000 of the $ 8,000 was paid to Mr. Tranakos for obtaining releases of liens on the Canterbury Estates property which we held was property belonging to Shamrock. Since this payment by Shamrock was of its own expense, the amount is clearly not deductible by Mr. Clements. The amount of $ 4,000 of the payments by Shamrock to Mr. Tranakos was a payment for services rendered by Mr. Tranakos in connection with the audit of Mr. Clements' 1972 tax return, which is the subject of the litigation in this case. Clearly this $ 4,000 is deductible by Mr. Clements. Section 212(3). Respondent does not contend that the $ 4,000 is not deductible by Mr. Clements but argues that it is offset by a dividend to Mr. Clements from Shamrock in an equal amount because Shamrock paid Mr. Clements' *250 obligation. Although the record is not as clear as it might be, we conclude on the basis of the record as a whole that this $ 4,000 was a bona fide loan by Shamrock to Mr. Clements. In 1973 and thereafter Shamrock's books were reviewed by a certified public accountant and proper entries made as to amounts paid by Mr. Clements on behalf of Shamrock and by Shamrock on behalf of Mr. Clements. Appropriate adjustments were made to net these amounts or, in some instances, a payment would be made of a balance due. From the record as a whole, we conclude that the $ 4,000 paid by Shamrock to Mr. Tranakos was actually paid with funds of Mr. Clements and this amount is properly deductible by Mr. Clements. The record shows that the remaining $ 1,800 of legal fees paid by Shamrock on behalf of Mr. Clements in 1972 were paid in connection with the lawsuit filed by Mr. Clements in Houston County and all of the $ 14,222.03 paid as legal fees of Mr. Clements by the partnership, except for an unidentified amount of $ 500, was paid for services or expenses in connection with the suit Mr. Clements brought in Houston County, georgia. Respondent makes no contention that the payments of $ 14,222.03 *251 by checks on the partnership, which were charged to Mr. Clements' drawing account with that partnership, were not payments by Mr. Clements. Respondent argues that $ 500 of the claimed $ 14,222.03 of attorneys' fees paid by Mr. Clements in 1975 is not deductible because it has not been shown for what purpose the amount was paid. Respondent contends that the balance of the $ 14,222.03 is not deductible because the payments were capital expenditures. Section 212(1) and (2) provides for deduction of ordinary and necessary expenses for the production or collection of income or the management, conservation or maintenance of property held for the production of income.Attorneys' fees paid for these purposes are deductible ordinary and necessary expenses. Bagley v. Commissioner, 8 T.C. 130, 134 (1947). However, it is well settled that amounts paid as attorneys' fees in connection with defending or protecting title to property or recovering property, or to quiet title to land, are nondeductible capital expenditures which must be added to the cost basis of the land. Section 1.212-1(k), Income tax Regs. *252 ; Woodward v. Commissioner, supra; Boagni v. Commissioner, 59 T.C. 708 (1973). The principles are much more easily stated than applied. As we pointed out in the Boagni case, supra at 713-- Situations arise where the litigation is rooted, in part, in the defense or perfection of title (nondeductible) and, in part, in the collection of income or for the management of property (deductible). In these circumstances, section 1.212-1(k), Income Tax Regs., contemplates that an allocation should be made * * *. As further pointed out in Boagni v. Commissioner, supra at 714, in numerous cases the regulations have been applied to allocate attorneys' fees between capital expenditures and deductible legal expenses. In the instant case, the suit instituted by Mr. Clements claimed a right to recover two pieces of property and claimed damages for bad faith and fraud dealing with Shamrock's transactions and other transactions between Messrs. Kushinka and Wisse and Mr. Clements. The suit also claimed recovery *253 for illegal charges made by Messrs. Wisse and Kushinka to Mr. Clements and that amounts were owed to Mr. Clements by Messrs. Wisse and Kushinka for goods delivered and services rendered.
Counts one and two of the original complaint clearly seek to obtain clear title to land, although these counts also claim damages because of the withholding by the defendants from Mr. Clements of clear title to the land. However, the claimed damages are related to the claim by Mr. Clements to title to the two parcels of land. In our view, the portion of the attorneys' fees paid by Mr. Clements in connection with these two counts are non-deductible capital expenditures. Count three of the original complaint claims that because of the false and fraudulent representations of his attorneys, Messrs. Wisse and Kushinka, the Shamrock transaction was structured so that Mr. Clements paid $ 111,173.46 more income tax for 1972 and 1973 than he would have been required to pay if the transaction had been properly structured. In this count, Mr. Clements seeks recovery of this $ 111,173.46 and damages of $ 250,000. *254 Whether legal fees paid are deductible business expenses or capital expenditures depends on the "origin-of-the-claim." Redwood Empire S. & L. Assoc. v. Commissioner, 68 T.C. 960, 977 (1977), and cases there cited. The matter covered by count three of Mr. Clements' complaint arose from his transaction in 1972 with Messrs. Wisse and Kushinka in which he acquired all the stock of Shamrock and not the Canterbury Estates land owned by Shamrock. If the allegations in the original complaint, as did the allegations of the amended complaint, had sought in part a reformation of the transaction so as to have the land transferred to Mr. Clements, the portion of the legal fees allocable to seeking such reformation would clearly be capital expenditures. However, count three of the original complaint did not seek to reform the transaction but, rather, to restore Mr. Clements to the after tax earnings he would have been able to retain had the transaction been a purchase by him of land and to obtain an award by him of damages. Damages which are sought because of the structure of a capital *255 transaction being different from the structure a taxpayer intended are so closely related to the acquisition of the capital asset that we conclude that legal fees seeking such damages are a capital expenditure which increases the basis of the capital asset acquired in the transaction. The more difficult question is whether the origin of the claim for $ 111,173.46 is so proximately related to the acquisition of the Shamrock stock as to be capital in nature or is so proximately related to the earnings produced by that stock for Mr. Clements as to cause legal expenses related thereto to be deductible as payments for production of income or conservation of income producing property. In our view, Mr. Clements' claim for the $ 111,173.46 is in substance a claim for damages resulting from the transaction in which he acquired Shamrock stock rather than the Canterbury Estates property owned by Shamrock. The amount of additional taxes paid is merely a measure of damages. We conclude that all of the allegations in count three of the original complaint have their origin in the capital transaction in which Mr. Clements acquired the Shamrock stock. Therefore, all the attorneys' fees paid with *256 respect to count three are nondeductible capital expenditures. Count four of the original complaint claims $ 10,000 for repayment of overcharges of attorneys' fees. The allegations in this count are not sufficiently detailed for us to determine the nature of the claim and therefore we conclude that the amount of attorneys' fees applicable to this count are not deductible. Count five of the original complaint seeks recovery of $ 50,000 from Messrs. Wisse and Kushinka for goods delivered to them and services rendered to them by Mr. Clements. This count clearly relates to the production of income by Mr. Clements and the legal fees allocable to this count are deductible expenses for the production of income. Count six of the original complaint seeks punitive damages of $ 250,000 from Messrs. Wisse and Kushinka for bad faith and fraud in connection with all the transactions covered by counts one through five. Count six appears to be proximately related to production of income by Mr. Clements. See Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955). Therefore, the portion of the legal fees paid in 1975 with respect to this count are deductible under section *257 212. We recognize, as was stated in the Boagni case, supra, that rarely does a record provide a satisfactory formula for allocating legal expenses between capital expenditures and deductible expenditures, and that often the best that can be done is a "rough" approximation. Boagni v. Commissioner, supra at 715. The record in this case shows that the legal work done by Mr. Boatright in 1974 and 1975 with respect to which the legal fees were paid involved all six counts of the original complaint. However, because of the hearing with respect to the summary judgment which resulted in the dismissal of the complaint as to Warner Robins Supply Company, Inc. and Messrs. Whiting and Bayer, it would appear that much of the legal work done in 1975 may have been in connection with count one of the original complaint. In our view, since the amended complaint was not filed until 1976 and we are concerned with attorneys' fees paid in 1975, we must allocate the amount paid on the basis of allegations in the original complaint. Since the record does not show the purpose *258 of the $ 500 check to cash included by Mr. Clements in his claimed deduction for attorneys' fees, the amounts shown to be paid as attorneys' fees in 1975 in connection with the Houston County suit is $ 15,522.03. Using our best judgment, based on the allegations in the complaint and all the evidence of record, we conclude that one-third of the $ 15,522.03 paid in 1975 as attorneys' fees in connection with the Houston County suit is properly deductible and the remaining two-thirds is a capital expenditure which may be used to increase the basis of the property involved in the suit. We therefore conclude on the basis of this record that Mr. Clements is entitled to a total deduction for attorneys' fees paid in the year 1975 of $ 9,174. This amount is arrived at by adding the $ 4,000 of attorneys' fees paid by Mr. Clements in contesting his proposed tax deficiency for 1972 to the portion of the fees paid in connection with the Houston County suit which we have determined to be deductible. On the basis of this record, we conclude that the individual petitioners Elton and Bonnie Clements were negligent in failing to include in their 1972 income the $27,491.75 disbursed to Mr. Clements *259 at the time of the closing of his pruchase of the stock of Shamrock and that Shamrock was negligent in deduction this amount as salary or commission paid to Mr. Clements on its 1972 tax return. Petitioners argue that they should not be liable for the addition to tax for negligence since they relied on accountants to prepare their tax returns. The reocrd, however, shows that at the time of the closing of the Shamrock transaction Mr. Clements was informed that there might be tax effects of his having the $27,491.75 disbursed to him by Shamrock and that he was reluctant to give the accountant making up Shamrock's return any information about this amount. There is no showing in the record that Mr. Clements gave any information about the disbursement of $27,491.75 of Shamrock's funds to him at the closing to the accountant who prepared his individual return. Mr. Clements signed the return of Shamrock which treated the $27,491.75 as salary paid to him deductible by Shamrock when he himself did not consider the amount as salary and even a cursory review of the Shamrock return would have disclosed that a deduction for salary to him was taken by Shamrock. Considering the record as a whole, *260 we conclude that petitioners have failed to show error in respondent's determination of an addition to tax for negligence for the year 1972 both with respect to the joint return of Mr. and Mrs. Clements and the corporate return of Shamrock. Decisions will be entered under Rule 155. Footnotes
1. Cases of the following petitioners are consolidated herewith: Elton L. Clements and Bonnie L. Clements, docket No. 2276-78; Shamrock Developers, Inc., docket No. 2277-78.↩
2. Unless otherwise stated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue.↩
3. Sec. 301(a) provides as follows: SEC. 301. DISTRIBUTIONS OF PROPERTY. (a) In General.--Except as otherwise provided in this chapter, a distribution of property (as defined in section 317(a) made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c). ↩
4. Sec. 316(a) provides as follows: SEC. 316. DIVIDEND DEFINED. (a) General Rule.--For purposes of this subtitle, the term "dividend" means any distribution of property made by a corporation to its shareholders-- (1) out of its earnings and profits accumulated after February 28, 1913, or (2) out of its earnings and profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. Except as otherwise provided in this subtitle, every distribution is made out of earnings and profits to the extent thereof, and from the most recently accumulated earnings and profits. To the extent that any distribution is, under any provision of this subchapter, treated as a distribution of property to which section 301↩ applies, such distribution shall be treated as a distribution or property for purposes of this subsection.
5. Unless otherwise indicated, any reference to "Rules" shall be deemed to refer to the Tax Court Rules of Practice and Procedure.↩
6. Our problem with respondent's computation, set forth in his brief, of $ 50,372.77 of current and accumulated earnings and profits of Shamrock is with respect to three figures. The first figure is respondent's figure of $ 9,537.83 which he apparently considers as Shamrock, reported income. From the tax return filed by Shamrock, as well as respondent's notice of deficiency, it appears to us that this figure should be $ 8,965.56. Also, we do not follow exactly respondent's method of computing the Federal income tax due by Shamrock for the year 1972 on its income for that year as we have redetermined it. Certainly the Federal income tax for Shamrock for the year 1972 will be required to be computed in a computation under Rule 155↩ and presumably the parties will be able to agree as to the State income tax due by Shamrock for 1972 on the taxable income which will be redetermined in accordance with our opinion for Federal tax purposes.